UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAKER HUGHES, INC. and
BAKER PETROLITE, LLC,

        Plaintiffs,

                                    File No. 1:14-CV-531

v.

                                    HON. ROBERT HOLMES BELL

S&S CHEMICAL, LLC, BRUCE NEAL STEVENS,
and SPE WAX TECHNOLOGIES, LLC,

        Defendants.

_____/

**O P I N I O N**

This is a trade secret case filed pursuant to Michigan's Uniform Trade Secrets Act,

Mich. Comp. Laws § 445.1902. The matter is presently before the Court on Defendants'

Motion to Dismiss (ECF No. 28). Plaintiffs have filed a Response (ECF No. 41), to which

Defendants have filed a Reply (ECF No. 45) and Plaintiffs have filed a Sur-Reply (ECF No.

53). For the reasons set forth below, the Court will grant in part and deny in part Defendants'

Motion to Dismiss.

**I.**

Defendant Stevens was an employee of the Petrolite Corporation, predecessor to

Plaintiff Baker Petrolite. Plaintiffs claim to own trade secrets related to ethylene

polymerization processes (EP processes) which are used in commercial production of its

products.

Defendant Stevens worked for Petrolite until 1996. In conjunction with his employment, he signed an employment agreement promising to protect Petrolite's trade secrets and other confidential information and not to disclose such to third parties. Defendant Stevens's position made him privy to much of Petrolite's confidential information, particularly related to its EP processes.

Around 1999, Defendant Stevens formed Defendant S&S Chemical. In 2002, in response to internal concerns that Defendant Stevens might be utilizing their confidential information, Plaintiffs' in-house counsel sent Defendant Stevens a letter reminding him of his obligations under his confidentiality agreement.

Defendant S&S has marketed since 2004 a polyethylene product that directly competes with Plaintiffs' products. Plaintiffs allege that Defendant S&S's product is manufactured using their proprietary EP process. Since 2004, Defendants have only produced 40,000 pounds of competing product.

While looking for manufacturers to produce its products, Plaintiffs interviewed several companies. These companies disclosed that they had been asked by a third party to make polyethylene products using processes that appear to Plaintiffs to be their proprietary EP processes.

In 2013, Plaintiffs located a press release dated from 2012 advertising Defendants' product. Plaintiffs researched the availability of the product and the third party manufacturers. The third party manufacturers had been required to sign non-disclosure

agreements that prevent disclosure of the identities of Defendants. Plaintiffs filed a petition in Texas state court in 2014 for a pre-suit deposition of the third party in order to determine what processes were used to manufacture the product. During that litigation, Defendants Stevens and S&S informed Plaintiffs that they sold their processes to Defendant SPE. In addition, Defendants agreed to reveal their EP processes to an independent expert for confidential evaluation in exchange for dismissing the deposition of the third party. The expert determined that Plaintiffs' and Defendants' EP processes are substantially similar.

Defendants Stevens and S&S argue that they began developing their polyethylene manufacturing processes independently in 2002. Defendants present evidence from several scientists in their employ demonstrating that, in developing their own EP processes, Defendants started from publicly available information, including U.S. patents, to develop products similar to Plaintiffs'. Defendant Stevens avers that he never shared any of Plaintiffs' proprietary information with the scientists working to develop competing products. Defendants completed their work in 2003, and began producing and selling the products immediately, and have done so intermittently since.

Plaintiff filed the instant lawsuit on May 13, 2014. (ECF No. 1.) This Court denied Plaintiffs' motion for preliminary injunction on July 1, 2014. (ECF No. 27.) Defendants now move to dismiss for failure to state a claim. (ECF No. 28.)

## II.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677), *cert. denied*, 132 S. Ct. 1583 (2012). Where a complaint pleads facts

4

that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Further, under Rule 10(c), the Court can consider the exhibits attached to the complaint without converting a defendant's Rule 12(b)(6) motion into a motion for summary judgment. Fed. R. Civ. P. 10(c); *see Koubriti v. Convertino*, 593 F.3d 459, 462 n.1 (6th Cir. 2010) ("Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

### III.

Defendants move to dismiss Plaintiffs' claims on the grounds that (1) the claim of fraudulent concealment fails to meet the heightened pleading standard of Federal Rule of Procedure 9(b); (2) claims are untimely under Michigan law; and (3) claims for exemplary and punitive damages are not cognizable under Michigan law.

As a preliminary matter, the Court must determine whether Michigan law applies to Plaintiffs' claims. Defendants argue that Michigan law applies to all claims, but suggests in a footnote that Texas law might apply. Plaintiffs equivocate on the choice of law, citing Missouri, Texas, and Michigan law. This Court, sitting in diversity, applies the choice of law

rules of Michigan. *Klaxton v. Senator Elec. Mfg. Co.,* 313 U.S. 487 (1942); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

The conflict rules pertaining to contract claims favor application of Missouri law to the breach of contract claim against Defendant Stevens. In *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.,* this Court observed that "in the context of a contract dispute, Michigan choice of law rules require courts to examine the factors articulated in sections 187 and 188 the Second Restatement [of Conflicts]." 297 F. Supp. 2d 972, 977–78 (W.D. Mich. 2004) (Carmody, Magis. J.), (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.,*528 N.W.2d 698, 702–03 (Mich. 1995)). Section 187 of the Restatement (Second) Conflict of Laws determines that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied." Defendant Stevens signed an Employment Termination Agreement subject to the laws of Missouri. At the time of Defendant Stevens' employment with Petrolite Corporation (predecessor of Defendant Baker Petrolite), Petrolite Corporation was based in Saint Louis, Missouri. Missouri law was a "reasonable basis for the parties' choice" to govern their employment agreement. *Id*. § 187(2)(b). This Court will apply Missouri law to Plaintiffs' breach of contract claims.

The conflict rules pertaining to tort claims presume application of Michigan law, unless there is a "rational reason" to displace Michigan law. *Sutherland v. Kennington Truck Serv.*, *Ltd.,* 562 N.W. 2d 466, 471 (Mich. 1997). Michigan courts undertake a two-step analysis to determine whether a rational reason exists:

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.* Defendants urge the Court to apply Michigan law to all Plaintiffs' claims. Plaintiffs argue that it is premature to engage in a choice-of-law determination before discovery. The Court finds that neither party has sufficiently addressed the choice-of-law concerns as to Plaintiffs' misappropriation of trade secrets claim. Therefore, the Court presumes, without deciding, that Michigan law applies for the purpose of deciding Defendants' motion to dismiss.

**A. Challenge to claim for fraudulent concealment**

Defendants move to dismiss Plaintiffs' claim for fraudulent concealment for failure to plead with specificity as required under Rule 9 of the Federal Rules of Civil Procedure.

In its amended complaint, Plaintiffs set out allegations in support of their claim of fraudulent concealment, Count III:

> 42. The discovery rule applies to Plaintiffs' claims against Defendants. . . .
>
> 43. Moreover, the running of any statute of limitations has tolled with respect to Plaintiffs' claims for misappropriation of trade secrets and with respect to Plaintiffs' rights to injunctive relief by virtue of Defendants' fraudulent concealment.
>
> 44. As described above, Defendants wrongfully concealed their misappropriation of Plaintiffs' trade secrets. Among other things, upon information and belief, when Defendants used and/or disclosed Plaintiffs' Trade Secrets to third parties, Defendants required those third parties to sign non-disclosure agreements beyond simply protecting the confidentiality of the process used, but also prohibiting the disclosure of even the identity of S&S and Stevens. Also, Defendants hid from Plaintiffs that they S&S [sic] sold

7

Plaintiffs' Trade Secrets to SPE, and Defendants misrepresented and continue
to misrepresent to Plaintiffs that they are using a process that is different than
Plaintiffs' EP Processes to the present date.

45. When Plaintiffs discovered the facts supporting their claim for
misappropriation of trade secrets against Defendants and Defendants refused
to stop using Plaintiffs' processes, Plaintiffs promptly filed this lawsuit.

(First Amd. Compl., ECF No. 22.) These allegations do not support an independent cause of

action under Rules 8 or 9(b). The allegations contained in Count III are directed at tolling of

the statute of limitations applicable to Counts I and II. Therefore, Count III is dismissed for

failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**B. Challenge to timeliness**

Defendants challenge Plaintiffs' claims as untimely because Michigan's three-year

statute of limitations bars Plaintiff's claims for misappropriation of trade secrets, and

Michigan's six-year statute of limitations bars claims for breach of contract. Plaintiffs agree

that they filed their complaint beyond the Michigan limitations period. Plaintiffs argue that

the discovery rule applies, and that fraudulent concealment of key facts giving rise to their

cause of action justifies tolling the statutes of limitations.

To justify tolling the statute of limitations as to Counts I and II, allegations of

fraudulent concealment must meet Federal Rule of Procedure 9(b) requirements. Complaints

subject to Rule 9(b) must plead "with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b). In order to meet the "particularity" requirement, "a plaintiff

[must] allege the time, place, and content of the alleged misrepresentations on which he or

she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 503 (6th Cir. 2013) (quoting *Sanderson v. HCA–The Healthcare Co.,* 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks and citation omitted)). *See also Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### 1. Breach of contract claim

Missouri law applies to Plaintiffs' breach of contract claims and provides a five-year statute of limitations. Mo. Rev. Stat. § 516.120. A defendant's improper act may toll the limitations period:

> If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented.

Mo. Rev. Stat. § 516.280. To toll the statute of limitations, Plaintiffs must show (1) when they realized they had a cause of action, (2) that they did not know or have reason to know they had a cause of action prior to that date, and (3) Defendants made some "positive efforts" to mislead Plaintiffs or avoid a suit. *M&D Enter., Inc., v. Wolff*, 923 S.W. 2d 389, 400 (Mo. Ct. App. 1996).

Defendants argue that Plaintiffs have failed to exercise due diligence in discovering the facts underlying their claims. Plaintiffs knew as early as 2002 that Defendant Stevens

9

may have violated his Employment Termination Agreement, when legal counsel for Baker Hughes sent Stevens a letter reminding him of his obligations.

For their part, Plaintiffs claim they had no reason to know they had a cause of action prior to discovering Defendants' press release and speaking to third parties in 2013. Although Plaintiffs knew that Defendant Stevens was still employed in their industry, Plaintiffs did not know he had breached his Employment Termination Agreement. Plaintiffs had no evidence that Stevens had taken formula or documents pertaining to their trade secrets. *See, e.g., Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 365–66 (5th Cir. 2000). The lack of availability of Defendants' products and Defendants' unusually restrictive non-disclosure agreements concealed Stevens' alleged breach. Upon investigation and legal process, Plaintiffs discovered in 2014 that Defendants' products were manufactured using EP processes similar to those Stevens had been privy to at Petrolite.

Plaintiffs' complaint alleges sufficient facts to support their contention that Defendant Stevens concealed his breach of contract. *See Williams v. Duke Energy Intl., Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) ("Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."). The dispute of fact regarding the significance of the 2002 letter to Defendant Stevens should be more appropriately addressed in a motion for summary judgment. Whether the discovery rule does apply under the facts of this case, or whether Plaintiffs can demonstrate evidence to support tolling the statute of limitations due

10

to fraudulent concealment, are issues that should be determined on a motion for summary judgment following discovery, not a motion to dismiss based on the pleadings. *See In re OnStar Contract Litigation*, 600 F. Supp. 2d 861, 867 (E.D. Mich. 2009).

### 2. Misappropriation of trade secrets claim

The Court presumes that Michigan law applies to the misappropriation of trade secrets claim. The Michigan Uniform Trade Secrets Act ("MUTSA") establishes a three-year limitations period:

> An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

Mich. Comp. Laws § 445.1907. The MUTSA expressly incorporates the discovery rule.

Michigan also recognizes that fraudulent concealment may toll the limitations period:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

*Id*. § 600.5855.[1] Michigan courts require plaintiffs to show that the defendant engaged in affirmative acts or misrepresentations designed to prevent discovery of the claim. *Doe v.*

---

[1] Texas law recognizes that the discovery rule and the fraudulent concealment doctrine may toll the three-year statute of limitations for claims of misappropriation of trade secrets. Tex. Civ. Prac. & Rem. Code Ann. § 16.010. *Ultraflo Corp. v. Pelican Tank Parts, Inc.* 926 F. Supp. 2d 935, 949–50 (S.D. Tex. 2013). Missouri law recognizes the doctrines under a similar analysis as Michigan law. Mo. Rev. Stat. § 417.461. *See M&D Enter., Inc.,* 923 S.W. 2d at 400.

*Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 406–07 (Mich. Ct. App. 2004); *Draws v. Levin*, 52 N.W.2d 180, 183 (Mich. 1952). Plaintiffs must show "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Evans v. Pearson Enterprises, Inc.,* 434 F.3d 839, 850–51 (6th Cir. 2006) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).

Defendants argue that Plaintiffs failed to perform due diligence in discovering the operative facts because Defendants have advertised their product since 2004 and have been competitors for several years. Plaintiffs admit that Defendants produced some competing products, but Plaintiffs aver that they did not know Defendants used EP processes. The EP processes used to develop the product— not the product itself—are the object of Plaintiffs' claims. Plaintiffs allege that Defendants concealed the process by employing restrictive non-disclosure agreements and by limiting availability of the product so Plaintiffs could perform an analysis. Plaintiffs were unable to discover the similarity of their EP processes until they initiated legal action and hired an expert evaluator. At that point in 2014, Plaintiffs realized that Defendants' products may be produced using substantially similar processes, and thus provide a cause of action for misappropriation of trade secrets.

To survive a motion to dismiss, Plaintiffs need only allege facts that "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Plaintiffs have pled sufficient

12

factual content that, if true, allows a reasonable inference that the discovery rule should apply, or that Defendants' non-disclosure agreements constitute an affirmative act designed to prevent discovery of misappropriated trade secrets. *See Tonegatto v. Budak*, 316 N.W.2d 262, 266 (Mich. 1982). Whether Plaintiffs knew or should have known the bases for their claims as early as 2004, and whether Plaintiffs can demonstrate sufficient evidence to support fraudulent concealment, are questions better addressed in a motion for summary judgment. *See, e.g. Wyeth v. Natural Biologics, Inc.*, 395 F.3d 897, 902 (8th Cir. 2005)*; Seatrax,* 200 F.3d at 363.

## C. Challenge to exemplary and punitive damages

In Counts IV and V of their Complaint, Plaintiffs seek to recover attorneys' fees and punitive damages for their claim of misappropriation of trade secrets. (First Amd. Compl. ¶ 46, 47.) Defendants contend that, because Counts IV and V fail to incorporate by reference the foregoing paragraphs of the complaint, the counts do not meet the pleading requirements of Federal Rule of Civil Procedure 8(a). Defendants also state that Michigan law does not allow exemplary or punitive damages.

As to Defendants' first contention, the Court disagrees. The Federal Rules of Civil Procedure simply require "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a). Plaintiffs do not need to use legal jargon or ritualistic formalities. Plaintiffs' claims for damages in Counts IV and V sufficiently reference Plaintiffs' misappropriation and contract claims to support

their demands for relief and provide notice to Defendants.

Defendants' second contention that Michigan law does not allow attorneys' fees is incorrect. The Michigan Uniform Trade Secrets Act permits recovery of reasonable attorney's fees if willful and malicious misappropriation exists. Mich. Comp. Laws § 445.1905. Defendants have not objected at this stage to Plaintiffs' assertion of willful and malicious misappropriation. Therefore, the Court declines to dismiss the claim for attorneys' fees in Count IV.

As to punitive damages, Plaintiffs concede that Michigan law does not recognize punitive damages. Plaintiffs argue that Missouri law allows for punitive damages against Defendant Stevens if the misappropriation was committed with "evil motive or reckless indifference to the rights of others." Mo. Rev. Stat. § 417.457. Texas law also allows for punitive damages under a similar showing. Tex. Civ. Prac. & Rem. Code Ann. § 41.003. Because the parties have offered insufficient arguments as to the appropriate choice of law, the Court declines to dismiss the claim for punitive damages in Count V.

## IV.

For the reasons set forth above, Defendants' motion to dismiss is granted as to Count III of Plaintiffs' complaint, and denied as to all other Counts. The Court will issue an Order consistent with this Opinion.

Dated: October 24, 2014                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE