UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAKER HUGHES, INC. and
BAKER PETROLITE, LLC,

    Plaintiffs,

v.

S&S CHEMICAL, LLC, BRUCE NEAL STEVENS,
and SPE WAX TECHNOLOGIES, LLC

    Defendants.
_____/

File No. 1:14-cv-531

HON. ROBERT HOLMES BELL

# **O P I N I O N**

This is a trade secret case filed pursuant to Michigan's Uniform Trade Secrets Act. Mich. Comp. Laws § 445.1902. The matter is presently before the Court on Defendants' Motion to Disqualify Plantiffs' Proposed Expert Witness David Bergbreiter, Ph.D. (ECF No. 102.) Plaintiffs filed a Brief in Opposition to Defendants' Motion. (ECF No. 119.) For the reasons that follow, Defendants' motion will be denied.

**I.**

Plaintiffs Baker Hughes, Inc. and Baker Petrolite, LLC (collectively referred to as "Baker") claim to own trade secrets related to ethylene polymerization processes (EP Processes), which it uses in commercial production of its products. Since 2004, Defendant S&S Chemical, LLC, has marketed a polyethylene product that directly competes with Baker's products.

While looking for manufacturers to produce its products, Baker interviewed several companies. These companies disclosed that they had been asked by a third-party to make polyethylene products using a process that Baker suspect is its proprietary EP Process. Baker believes Defendant S&S is that third-party. Defendants Stevens and S&S argue that they began developing their polyethylene manufacturing processes independently in 2002.

In early 2014, Baker hired Dr. David Bergbreiter to evaluate both EP processes. Bergbreiter evaluated Defendants' EP Process, and concluded that Baker's and Defendants' EP Processes are substantially the same. The subject matter of Dr. Bergbreiter's meeting with Defendants is the basis for Defendants' motion to disqualify him as an expert witness.

Defendants contend that they only allowed Bergbreiter to evaluate their EP Process because "Bergbreiter was characterized as an 'independent' expert and because the parties executed a Confidentiality Agreement governing the use and disclosure of the confidential and proprietary information disclosed." (ECF No. 102, PageID #2299.) Defendants note that the confidentiality agreement classified all information provided to Bergbreiter as "Expert's Eyes Only," meaning that it may not be disclosed by Bergbreiter without Defendants' written consent. Defendants further assert that it was their understanding that the purpose of the meeting was to negotiate a potential settlement, and not for Baker to gather evidence in preparation for a future lawsuit.

Baker, on the other hand, asserts that the meeting between Bergbreiter and Defendants was an alternative to a pre-suit deposition, "the sole purpose of which was to inform [Baker]

whether [it] had a good faith basis to pursue [its] claims. It was not intended for settlement discussions nor for either party to share information regarding litigation strategy or tactics relating to those EP processes with Dr. Bergbreiter." (ECF No. 119, PageID #2638.)

## II.

A court's decision to disqualify an expert is discretionary. *3D Sys., Inc. v. Envisiontech, Inc.*, No. 05-74891, 2008 WL 4449595, at *1 (E.D. Mich. Oct. 1, 2008). While courts have "inherent power to disqualify expert witnesses . . . [d]isqualification is a drastic measure that should be used sparingly." *Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, No. 11-12839, 2012 WL 3870563 (E.D. Mich. Sept. 6, 2012) (citing *BP Amaco Chem. Co. v. Flint Hills Res., Inc.*, 500 F. Supp. 2d 957, 959 (N.D. Ill. 2007); *Koch Refining Co. v. Bourdeau*, 85 F.3d 1178 (5th Cir. 1996); *Tessler v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)).

"In disqualification cases other than clear situations in which an expert switches sides, the Court considers a two-part test: (1) whether the expert had a confidential relationship with the adversary; and (2) whether the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Thompson*, 2012 WL 3870563, at *2 (citing *Sensomatic Elec. Corp. v. WG Sec. Prods., Inc.*, No. 2:04-cv-167, 2006 WL 5111116 (E.D. Tex. Feb. 9, 2006)). The party seeking disqualification of the expert has the burden of proving that a confidential relationship exists and that the adversary disclosed confidential information to the expert that is relevant to the current litigation. *Id.*

The Court may also consider policy objectives such as "ensuring litigants have access to experts with specialized knowledge, the right of experts to pursue their profession, and ensuring the integrity of the judicial system by preventing litigants from easily disqualifying experts." *Id.* at *3 (citing *Cordy v. SherwinWilliams Co.*, 156 F.R.D. 575, 580 (D.N.J. 1994)).

### III.

#### A. Expert Disqualification

**1. Confidential Relationship**

Defendants argue that a confidential relationship existed between Defendants and Bergbreiter. In support of this, Defendants point to the fact that a confidentiality agreement was executed and that Bergbreiter was provided with "highly sensitive confidential" information under the terms of the confidentiality agreement. (ECF No. 102, PageID # 2302-03.) Baker argues that "it is objectively unreasonable for Defendants to assume that the single meeting with Dr. Bergbreiter would form the basis for any confidential relationship going forward." (ECF No. 119, PageID #2641.)

When evaluating whether a party's assumption of a confidential relationship is reasonable, courts consider a multitude of factors. A court is more likely to find a confidential relationship exists when the expert and the moving party engage in frequent interactions than when "'the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services[.]" *Koch*, 85 F.3d at 1182 (quoting *Mayer v. Dell*, 139 F.R.D. 1, 3-4 (D.D.C. 1991)).

Courts also consider factors such as "[w]hether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial." *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001). Great weight is also given to whether a formal confidentiality agreement is entered into. *See Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of Am., Inc.*, No. SACV 04-0043 CAS (MLGx), 2006 WL 5164249, at *4 (C.D. Cal. Nov. 6, 2006) (finding it reasonable for the moving party to believe a confidential relationship existed between the moving party and an expert retained by the nonmoving party based on the execution of two non-disclosure agreements).

Here, the fact that Baker, rather than Defendants, retained and paid Bergbreiter weighs against Defendants' argument that a confidential relationship existed. *See Koch*, 85 F.3d at 1182 (finding that the moving party had a reasonable expectation of confidentiality based in part on the moving party's $8,000 payment to the expert). The fact that Bergbreiter and Defendants met once and did not have an ongoing relationship also weighs against Defendants' expectation of a confidential relationship. *Id.* Still, the fact that a confidentiality agreement was drafted should be given great weight. *Twin City Fire*, 2006 WL 5164249, at *4.

While a close call, the Court finds that, given the confidentiality agreement, it was reasonable for Defendants to believe a confidential relationship existed. The Court must next

5

examine whether Defendants exchanged confidential or privileged information with Bergbreiter.

### 2. Disclosure of Confidential or Privileged Information

Defendants appear to argue that because a confidentiality agreement was signed, identifying the information as "highly sensitive confidential information," the matter is resolved, and this Court should find the information "confidential or privileged" for the purposes of disqualifying the expert. Defendants are mistaken–a label of "confidential information" is not sufficient to disqualify an expert under this factor.

To determine whether information is "confidential" under this factor, courts look to whether the information would have otherwise been discoverable. "Only the disclosure of confidential information that the opposing party would be unable to obtain through discovery should form a basis for disqualification of an expert witness." *See Twin City Fire*, 2006 WL 5164249, at *4. Examples of nondiscoverable information include discussion of litigation strategy, attorney work product, privileged information, anticipated defenses at trial, the role of each party's witnesses, and a party's views of the strengths and weaknesses of each side's position. *Id.*; *see also Mayer*, 139 F.R.D. at 4. Notably, some courts have held that "purely technical information is not confidential." *Koch*, 85 F.3d at 1182 (citing *Nikkal Ind., Ltd. v. Salton*, 689 F. Supp. 187, 190 (S.D.N.Y. 1988)). The moving party "should point to specific and unambiguous disclosures that if revealed would prejudice the party." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004).

In this case, Defendants argue that they "provided Bergbreiter with documents and information detailing the confidential and proprietary specifics of their polymerization process including, but not limited to, notes related to Defendants' processes, information regarding suggested procedure for the processes, and information regarding future plans with the processes." (ECF No. 102, PageID # 2301.) Defendants do not suggest that any attorney work product or litigation strategy was divulged to Bergbreiter. Dr. Bergbreiter appears to have received "purely technical" information, which is not confidential under this factor. *Koch*, 85 F.3d at 1182. As Defendants have not pointed to any "specific and unambiguous" disclosures that would prejudice them, Defendants' claim that Bergbreiter received confidential or privileged information sufficient to disqualify him as an expert witness fails.

**B. Defendants' Rule 408 Argument**

Lastly, Defendants argue that Bergbreiter's testimony should be excluded as a confidential settlement communication under Federal Rule of Evidence 408. The confidentiality agreement provides that "the Parties have agreed to meet and confer in Houston, Texas, on March 5, 2014, concerning the allegations made by [Baker.] . . . [Baker has] engaged David Bergbreiter, Ph.D. ("Bergbreiter"), as a consultant to discuss with [Defendants] its process for manufacturing polyethylenses and alcohols so that [Defendants'] purportedly confidential information will not be revealed." (Confidentiality Agreement, ECF No. 102-1, PageID #2312.) Defendants emphasize that the confidentiality agreement states: "[T]o protect the respective interests of the Parties and *to facilitate the progress of disclosure*

7

*and negotiation in this matter*, [the parties] and Bergbreiter agree that the following terms shall govern the disclosure, use, and return of all proprietary and confidential information regarding the Parties' polymerization processes to Bergbreiter . . . ."(*Id.*) (emphasis added).

Baker, on the other hand, did not believe that the meeting was for the purpose of settlement discussions. Baker notes that during the meeting, no settlement discussions occurred, and that "Bergbreiter did not have authority to accept any settlement offers from Defendants, nor to make any settlement offers on [Baker's] behalf." (ECF No. 119, PageID #2645.)

In relevant part, Rule 408 provides that evidence of "conduct or a statement made during compromise negotiations about the claim" is inadmissible, "except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority." Fed. R. Evid. 408(a)(2). The party invoking Rule 408 has the burden of proving the Rule applies. *Foreword Magazine, Inc. v. Overdrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *6 (W.D. Mich. Oct. 31, 2011).

Two primary policy considerations underlie the Rule. First, evidence of an offer to compromise is "irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408 (Advisory Committee's Note). Second, the Rule promotes the "public policy favoring the compromise and settlement of disputes." *Id.* "Rule 408, however, does not bar all communications made during settlement . . . '[it] excludes only evidence of conduct and statements made solely as part of

8

the settlement negotiations, and not statements and conduct made at the meeting which are unrelated to such compromise negotiations.'" *Stryker Corp. v. XL Ins. Am., Inc.*, No. 1:05-cv-51, 2013 WL 2376408, at *2 (W.D. Mich. June 27, 2013) (quoting *Trans Union Credit Info. Co. v. Assoc. Credit Servs., Inc.*, 805 F.2d 188, 192 (6th Cir. 1986)).

Defendants have failed to meet their burden of showing that Rule 408 applies to the meeting that occurred between Defendants and Bergbreiter. The sentence of the confidentiality agreement that Defendants rely on in support of their assertion that the meeting was for the purpose of settlement discussions pertains to "the disclosure, use, and return of all proprietary and confidential information," not the overall purpose of the meeting. Moreover, Defendants do not identify any statements made between Bergbreiter and Defendants discussing settlement negotiations. Accordingly, Defendants' motion to exclude Bergbreiter's testimony under Rule 408 fails.

## IV.

For the reasons stated above, Defendants' motion to disqualify Dr. Bergbreiter as an expert witness will be denied.

The Court will issue an Order consistent with this Opinion.


Dated: September 18, 2015         /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  UNITED STATES DISTRICT JUDGE

9